**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JAVIER TORRES, ALMA SANTIAGO and LIA RIVADENEYRA, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TERRY GODDARD, Attorney General of the State of Arizona, in his individual and official capacities, and CAMERON ("KIP") HOLMES, in his individual capacity,<br><br>Defendants. | No. CV 06-2482-PHX-SMM<br><br>**ORDER** |

Previously, on March 31, 2010, the Court denied Plaintiffs' motion for class certification (Doc. 183). Under Federal Rule of Civil Procedure 23(f), Plaintiffs immediately appealed the Court's order to the Ninth Circuit. On June 14, 2010, the Ninth Circuit denied Plaintiffs' petition for permission to appeal the denial of class certification (Doc. 184). As a result of the Ninth Circuit's ruling, the Court scheduled a status conference with the parties to discuss the current posture of the litigation.

At the June 29, 2010 hearing, the parties discussed several pending issues: (1) Plaintiffs' Motion for Leave to File Third Amended Complaint; (2) a discovery dispute involving work product protection and attorney-client privilege; and (3) new deadlines for discovery and dispositive motions. After discussion with the parties, the Court stated that it would issue a written Order addressing these issues. The Court now makes the following

rulings.

**I.      Motion to Amend Complaint[1]**

On September 11, 2009, Plaintiffs filed a Motion for Leave to File a Third Amended Complaint seeking to add two additional claims not included in their prior complaints (Doc. 176). Count V pleads a violation of substantive due process on behalf of all members of the proposed plaintiff class. This count asserts that Defendants' seizure of Plaintiffs' funds violated due process because the funds were not present in Arizona at the time of seizure, and therefore, were beyond the reach of an Arizona state court warrant. Count VI also pleads a substantive due process violation, but limits the claim to the subset of class members whose fund transfers were intended for delivery in Sonora, Mexico.

Defendants object on grounds of undue delay, prejudice, and futility. First, Defendants argue that Plaintiffs have waited three years to add these new claims, despite knowing of the facts underlying the claims since the case's inception. Second, Defendants argue that they will suffer prejudice because defending against the new claims will require substantial new discovery, including re-deposing the two Plaintiffs. Finally, Defendants argue that Plaintiffs' amended complaint is futile for several reasons: (1) the proposed amendment violates the Younger doctrine because questions about the return of monies subject to the Sonora Warrant still need to be determined in Western Union's pending state lawsuit; (2) the proposed amendment asks the Court to assume jurisdiction improperly; (3) the proposed amendment seeks restitution of funds not in Defendants' possession; and (4) the proposed amendment fails to add a necessary party --- Western Union.

---

[1] Plaintiff's motion to amend was filed while the Court had class certification under advisement. As a result, the proffered new claims are framed in terms of the proposed plaintiff class. Rather than ruling on the motion to amend, the Court decided to wait and address the motion after determining class certification. At the hearing, Defendants proposed submitting further briefing on the motion to amend in light of subsequent developments, including the Court's denial of class certification and the Arizona Supreme Court's decision in State of Arizona v. Western Union Financial Services., Inc., 220 Ariz. 567, 208 P.3d 218 (2009). Plaintiffs opposed this request as unnecessary. The parties submitted extensive briefing with the original motion, and thus, the Court finds that no supplemental briefing is necessary.

Except for amendments made "as a matter of course" or pursuant to stipulation, leave of the court is required to amend a pleading. Fed. R. Civ. P. 15(a). Federal Rule of Civil Procedure 15(a) directs that courts should freely grant leave when "justice so requires." Federal policy strongly favors determination of cases on their merits, thus the policy favoring amendment is to be applied by this Court with "extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001); see Foman v. Davis, 371 U.S. 178, 182 (1962).

Federal Rule of Civil Procedure 15(a)'s liberal policy favoring amendments is subject to some limitations. Grant or denial of leave to amend is within the sound discretion of the court. Swanson v. U.S. Forest Service, 87 F.3d 339, 343 (9th Cir. 1996). When evaluating whether to grant leave to amend, the court considers whether the amendment 1) would cause prejudice to the opposing party; 2) is sought in bad faith or with dilatory motive; 3) is futile; 4) creates undue delay; or 5) comes after repeated failure to cure deficiencies by previous amendment. Foman, 371 U.S. at 182. Although the grant of leave to amend is discretionary, in the absence of any of the Foman factors there is a presumption that leave will be granted. Eminence, 316 F.3d at 1052.

**A.     Presence or absence of undue delay**

If a motion to amend will cause unfair delay, the motion may be denied. De Saracho v. Custom Food Machinery, Inc. 206 F.3d 874, 878 (9th Cir. 2000). However, delay alone is not a sufficient basis to deny a motion to amend if the proposed amendment would not cause undue prejudice. See Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). "Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied." De Saracho, 206 F.3d at 878 (quoting Jordan v. County of L.A., 669 F.2d 1311, 1324 (9th Cir. 1982)); see also Acri v. Int'l Ass'n of Machinists, 781 F.2d 1393, 1398 (9th Cir. 1986).

Defendants contend that Plaintiffs have known of the new theories upon which the proposed amendment is based, as well as the facts underlying them, since the start of this lawsuit over three years ago. Plaintiffs' counsel actively tracked the proceedings in the federal and state court lawsuits brought by Western Union over the Sonora Warrant. The state court case was referenced in Plaintiffs' original complaint, and Plaintiffs sought a transfer of their action to this Court because of the relationship to Western Union's federal lawsuit. The complaint filed by Western Union in federal court alleges similar claims to Plaintiffs' proposed new due process claims. Plaintiffs allowed discovery to proceed and class certification to be addressed before attempting to add the two new claims. Plaintiffs also amended their complaint twice before, and did not seek to include the new claims earlier. Thus, Defendants argue that this undue delay warrants a denial of leave to amend.

Plaintiffs respond that delay alone is not a reason to deny leave to amend, unless the delay would cause prejudice to the opposing party. Morango Band of Mission Indians, 893 F.2d at 1079. Plaintiffs argue that Defendants will not be prejudiced by Plaintiffs' proposed amendment, and thus, the Court cannot deny their motion solely on grounds of delay.

In examining the parties' arguments, the Court finds that Plaintiffs unduly delayed in bringing their two new claims. The substantive due process claims, and the facts underlying them, were known to Plaintiffs since the inception of this litigation, and yet they chose not to include them in prior amendments to their complaints. De Saracho, 206 F.3d at 878. Early on, Plaintiffs were aware that Defendants seized money transfers sent from states outside Arizona to Arizona, or in one case, to Sonora, Mexico. As a result, Plaintiffs could have asserted a violation of due process based upon the funds not being present in Arizona, and thus, beyond the reach of an Arizona warrant. However, Plaintiffs decided not to bring these claims, and they provide no explanation for the nearly three-year delay. Instead, Plaintiffs allowed the discovery period to run and the parties to brief extensively the question of class certification before attempting to add the two new claims. Such late amendments to assert new theories are not reviewed favorably when the theory and facts have been known

since the start of the litigation.  <u>Acri</u>, 781 F.2d at 1398.  Furthermore, Plaintiffs amended their Complaint twice previously, and failed to include the new claims in either amendment.

Although the delay is relevant, this factor alone is not sufficient to deny a Motion for Leave to Amend unless the amendment also will prejudice the Defendants.  Prejudice will be discussed next.

**B.     Prejudice to the opposing party**

Defendants argue that if Plaintiffs' request to amend their complaint is granted, Defendants will be unfairly prejudiced.  Because Defendants deposed Mr. Torres and Ms. Rivadenyera without knowing about these two new due process claims, Defendants did not inquire into the connection between the transactions and crime occurring in Arizona.  By allowing Plaintiffs to amend their complaint, Defendants will have to re-depose the two Plaintiffs, causing additional expense.  Defendants also claim that they will have to gather additional discovery from Western Union to show that the monies in the challenged transactions are connected to the State of Arizona through the presence of Western Union and its computer network here.  In addition to the expense, witnesses will be extremely difficult to find, especially if class certification is granted.  Finally, Defendants state that allowing the amendment will require reopening class certification to allow them to create a further record to defeat class certification of the new claims.

Plaintiffs respond that Defendants will not be prejudiced by the amended complaint because they already have all the evidence relevant to the substantive due process claims. Plaintiffs' new claims stem from the Arizona Supreme Court's <u>Western Union</u> decision wherein the court ruled that Arizona trial courts lack jurisdiction to issue warrants authorizing the seizure of money transfers that originated and were directed to sites outside of Arizona.  220 Ariz. at 567-68, 576, 208 P.3d 218-19, 227.  The critical issue, then, is where the Plaintiffs' money was located once they deposited it with Western Union.  According to Plaintiffs, Western Union previously disclosed the location of each sender and receiver who had a money transfer seized, and Plaintiffs concede that Western Union's computer network is present in all fifty states.  The question of whether Arizona courts can exercise jurisdiction

1  over the money transfer is a legal one that requires no additional discovery. Finally, to the
2  extent that Defendants suggest that they will have to depose Plaintiffs about the purpose of
3  their money transfers, Defendants have already deposed Plaintiffs on this issue.

4  Despite Plaintiffs' arguments, the Court finds that Defendants will be prejudiced if
5  the Third Amended Complaint is permitted. Previously, Plaintiffs due process claims were
6  procedural, not substantive, and addressed claimed deficiencies in the notice and hearing
7  opportunities provided to Plaintiffs. Adding substantive due process claims now, several
8  years into the litigation, will alter the scope of the case. In order to defend against the new
9  substantive due process claims, Defendants will need to conduct additional discovery to show
10 that the monies seized under the warrants were connected to Arizona through the presence
11 of Western Union, and through the connection between the monies and crime in Arizona.
12 This discovery will require Defendants to expend additional resources.

13 Because the Court finds that Plaintiffs unduly delayed in bringing their proposed
14 Third Amended Complaint, and that Defendants will suffer prejudice if the Third Amended
15 Complaint is filed, the Court exercises its discretion to deny Plaintiffs' motion.

**II.  Discovery Dispute**

17 Plaintiffs previously notified the Court that the parties had reached an impasse
18 regarding certain discovery requests and the second version of Defendants' privilege log.
19 According to Plaintiffs, Defendants assert that the requested materials are not discoverable
20 on account of attorney-client privilege, work product protection, or the documents are "law
21 enforcement sensitive." Plaintiffs contend that the issues in this case involve attorney
22 conduct, and therefore Defendants' assertion of privilege and work product are in error.

23 While most discovery disputes are handled via telephonic hearing, the Court ordered
24 the parties to submit written memoranda given the subject matter of the dispute (attorney-
25 client privilege and work-product protection) (Doc. 128). Plaintiffs and Defendants both
26 complied with the Court's Order (Doc. 135, 136).

27 ///
28 ///

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . ." Fed. R. Civ. P. 26(b)(1). Rule 26 continues, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. However, the broad scope of permissible discovery is limited by the attorney work product doctrine and other relevant privileges, such as the attorney-client privilege. See Fed. R. Civ. P. 26(b)(1), (3).

### A. Work Product Protection

#### 1. *Does Work Product Protection Apply?*

The work product doctrine protects from discovery material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial. Hickman v. Taylor, 329 U.S. 495, 509-12 (1947). One of the primary purposes behind the work product doctrine is to prevent one party from exploiting the other party's efforts in preparing for litigation. Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 576 (9th Cir. 1992). The doctrine has been substantially codified by Federal Rule of Civil Procedure 26(b)(3):

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . . But, subject to Rule 26(b)(4), those materials may be discovered if: . . . the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Pursuant to Rule 26(b)(3)(A), Plaintiffs may not discover documents prepared in anticipation of litigation by or for another party or its representative unless the party seeking discovery shows that it has substantial need for the materials and cannot obtain the substantial equivalent by other means without undue hardship. Holmgren, 976 F.2d at 577. Work product protection covers a wide range of documents, including "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." Hickman, 329 U.S. at 511.

1 | Defendants argue that the materials Plaintiffs seek to have disclosed were prepared or gathered by attorneys and staff members of the Arizona Attorney General's Office Criminal Division, including its Financial Remedies Section, or by someone at the Department of Public Safety. These individuals were carrying out law enforcement functions through the seizure and forfeiture of money laundering proceeds and criminal prosecution of individuals. The disputed materials include work prepared during and for litigation in the ongoing money transmitter seizure program from which Plaintiffs' claim stem, prepared for ongoing court challenges brought by Western Union, and anticipated prosecutorial, seizure and forfeiture proceedings arising from the money transmitter data.

Plaintiffs themselves concede that many of the documents are "work product" in the sense of being prepared by or for lawyers for litigation purposes (Doc. 135, 3:2-5). After its own examination of the privilege log, the Court finds that work product protection applies to those documents designated by Defendants as attorney-work product or "AWP."

>    *2.   Have Plaintiffs Shown Mental Impressions at Issue and Compelling Need?*

Even if the work product doctrine applies, a party may overcome the doctrine by making a sufficient showing of need. A party must show that it has a substantial need for the materials and cannot, without undue hardship, obtain the substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A). Additionally, a court ordering discovery of work product materials must protect against "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). This latter form of work product is referred to as "opinion work product," and requires a showing beyond the substantial need or undue hardship test required for non-opinion work product. Holmgren, 976 F.2d at 577. Thus, opinion work product may be discovered and admitted only when mental impressions are at issue in a case and the need for the material is compelling. Id.

///

///

1  While Plaintiffs agree that the disputed documents may be work product, they argue
2  that when an attorney is a defendant and his actions are at issue, any such work product is
3  discoverable. Plaintiffs rely on two cases: In re Sunrise Securities Litigation, 130 F.R.D. 560
4  (E.D. Pa. 1989)) and SEC v. National Student Marketing Corporation 18 Fed. R. Serv. 2d
5  1302 (D.D.C. 1974)). Both cases deal with the situation where the mental impressions of the
6  attorneys are at issue in a case.

Opinions are at issue in a case where the legal advice itself is necessary to address a claim or defense, such as where a party asserts an advice of counsel defense, or where the central issue is a party's good or bad faith. Holmgren, 976 F.2d at 577; see also Handgards, Inc. v. Johnson & Johnson, 413 F. Supp. 926, 933 (N.D. Cal. 1976); Reavis v. Metro. Prop. and Liab. Ins. Co., 117 F.R.D. 160, 164 (S.D. Cal. 1987). In the present case, the substance of legal advice provided by counsel for the AG's Office and questions of good or bad faith do not appear to be at issue. The seizure warrants and forfeiture proceedings contested by Plaintiffs rely on public filings by the Arizona Attorney General's Office in Maricopa County Superior Court. If the affidavits supporting the seizure warrants lacked sufficient probable cause or failed to include the requisite specificity required by the Constitution, these defects should appear in the documents themselves. Plaintiffs' claims do not require investigation into the thoughts of the attorney who submitted the paperwork for the warrant. Similarly, Plaintiffs' claims under the Fourteenth Amendment and the Commerce Clause depend on facts gained from the public seizure and forfeiture documents. What Defendants Goddard or Holmes thought about the seizure warrants is not relevant to whether there was a due process or commerce clause violation. Therefore, the attorneys' mental impressions are not at issue in the case.

Even were the mental impressions at issue in the case, Plaintiffs are unable to demonstrate a compelling need for the protected material. Defendants claim that Plaintiffs have obtained the equivalent of the protected material through other discovery or publicly available information. Defendants point to the following discovery: (1) interrogatory answers, (2) the depositions of Defendant Holmes, Attorney General Goddard, paralegal

Carol Keppler, former Chief Deputy Attorney General James Walsh, and investigator Dan Kelly, and (3) the state court briefing in response to Western Union's legal challenge. Defendants argue that Plaintiffs have not shown how this discovery left them with a compelling need for the protected work product.

Compelling need exists whenever "information is within the exclusive control of the party from whom discovery is sought, regardless of whether the information might also be obtained from that party through depositions, interrogatories or document production." Sunrise Securities, 130 F.R.D. at 569. To establish compelling need, a party does not have to show that the information cannot be obtained by any method other than document production. Id. at 568. The Court finds that Plaintiffs have not shown their compelling need for the materials. Plaintiffs were able to depose Defendant Holmes and other AG's Office employees about the seizures at issue in the present case. As to Defendant Holmes, he was deposed about the seizure, forfeiture, and notice process, and what his role was in connection with the investigation. The principal affiant on the seizure warrants, Dan Kelly, also was deposed. Moreover, extensive briefing was filed in state court by Mr. Holmes as part of Western Union's legal challenges to the Sonora Warrant. Thus, Plaintiffs has obtained the same information through other discovery or public information.

As the documents are protected as opinion work product, no disclosure of these documents is ordered by the Court. To the extent that the documents represent non-opinion work product, Plaintiffs have failed to show that they have a substantial need for the materials and cannot, without undue hardship, obtain the substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A).

*3. Has Work Product Protection Been Waived?*

Plaintiffs assert that Defendants have waived any work product protection by selectively producing work product documents beneficial to them, while withholding others they believe to be harmful. These communications reveal mental impressions and legal strategies regarding the preparation, service, and execution of the contested seizure warrants.

1   Plaintiffs argue that such use of the work product protection as both a sword and shield
2   results in waiver.

3   Work product protection may be waived. United States v. Nobles, 422 U.S. 225, 229
4   (1975). However, courts generally find waiver only if the disclosure "substantially increases
5   the opportunity for potential adversaries to obtain the information." Samuels v. Mitchell, 155
6   F.R.D. 195, 201 (N.D. Cal. 1994) (citation omitted). Determining whether work product
7   protection was waived requires a court to balance the need for discovery with the right of an
8   attorney to retain the benefits of his own research. SNK Corp. of Am. v. Atlas Dream
9   Entertainment Co., 188 F.R.D. 566, 571 (N.D. Cal. 1999). A party may not selectively
10  disclose some work product documents beneficial to their claims while withholding others
11  that potentially harm them. "The attorney-client privilege and work product immunity 'may
12  not be used both as a sword and a shield. Where a party raises a claim which in fairness
13  requires disclosure of the protected communication, [these protections] may be implicitly
14  waived.'" Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P., 266 F. Supp. 2d 1144,
15  1148 (C.D. Cal. 2003) (quoting Columbia Pictures Television, Inc. v. Krypton Broad. of
16  Birmingham, Inc., 259 F.3d 1186, 1196 (9th Cir. 2001)); see also Kintera, Inc. v. Convio,
17  Inc., 219 F.R.D. 503, 512 (S.D. Cal. 2003).

18  The email correspondence provided by Plaintiffs as evidence of Defendants' selective
19  disclosure consists of communications between AG's office lawyers and between law
20  enforcement and the AG's office. After an examination of the attached emails, the Court
21  finds that the work product protection was not waived. Several of the emails relate to
22  MoneyGram warrants which are not being contested in this case. As to the other three
23  emails, it is unclear whether the sweeps are those at issue in this case. For example, one
24  email is from April of 2004, and none of the contested warrants involve seizures from this
25  time period.

26  **B.  Attorney-Client Privilege**

27  Issues concerning application of the attorney-client privilege in non-diversity cases
28  are governed by federal common law. Clark v. Am. Commerce Nat'l Bank, 974 F.2d 127,

129 (9th Cir. 1992). "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996) (internal quotation omitted). The privilege applies to communications between a lawyer and a client where the lawyer counsels, as well as when the lawyer represents the client in litigation. Id. Since the attorney-client privilege "impedes full and free discovery of the truth," it must be strictly construed. Weil v. Inv./Indictators, Research & Mgmt, 647 F.2d 18, 24 (9th Cir. 1981). For the privilege to apply, the following elements must be present: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002) (citing 8 Wigmore, *Evidence* §§ 2292, at 554 (McNaughton rev. 1961)). The burden is on the person asserting the privilege to establish the elements of the privilege. Id.

Plaintiffs argue that Defendants' assertion of the attorney-client privilege should be overruled for the following entries on Defendants' privilege log: Items 9, 14-16, 79, 85, 323. Plaintiffs argue that these entries do not indicate communications for the purpose of obtaining legal advice. Furthermore, several of the entries are vague as to author and subject matter. In response, Defendants assert that the documents consist of the following: (1) requests for legal advice from AGO attorneys made by employees of the Arizona Department of Public Safety; (2) requests for legal advice made by employees of the Arizona Department of Financial Institutions, a client of the AGO; and (3) legal advice from an AGO attorney in representation of the AGO itself.

After the Court's examination, documents 9, 14, and 323 identified by Plaintiffs are vague and do not definitely show communications between attorney and client to secure legal advice. Neither of these entries indicates that the communications were for the purpose of legal advice. As Defendants are the party asserting the privilege, it is their burden to show

that the documents should not be disclosed. Martin, 278 F.3d at 999. For these three entries, Defendants must provide a further showing to the Court of the grounds for assertion of the attorney-client privilege.

As to the remaining contested documents, 15, 16, 79, 85, 323, Defendants claim both attorney-client privilege and work product protection. While these entries are insufficient for purposes of the attorney-client privilege, the Court finds that work product protection prevents these documents from discovery.

### C. Law Enforcement Sensitive Material

Plaintiffs assert that Defendants have withheld twenty-three additional documents based on the fact that they are "law enforcement sensitive." Plaintiffs presume this is an invocation of the common-law "law enforcement investigatory privilege." In response, Defendants state that the disputed material discusses police operational strategies, undercover programs, and targets of criminal investigations. Defendants argue that such materials are irrelevant because they deal with operations outside the seizures challenged by Plaintiffs.

The law enforcement investigatory privilege is based on the harm to law enforcement efforts which might arise from public disclosure of investigatory files. United States v. Winner, 641 F.2d 825, 831 (10th Cir. 1981). The party claiming the privilege, here Defendants, has the burden to establish its existence. Friedman v. Bache Hasley Stuart Shields, Inc., 738 F.2d 1336, 1341 (D.C. Cir. 1984). For Defendants to assert the law enforcement investigatory privilege, certain elements must be met: (1) a formal claim of privilege by the head of the department with control over the requested information; (2) the assertion of the privilege must be based on personal consideration by that official; and (3) the information for which the privilege is claimed must be specified with an explanation as to why it falls within the scope of the privilege. U.S. ex rel Burroughs v. DeNardi Corp., 167 F.R.D. 680, 687 (S.D. Cal. 1996).

Based on Defendants' privilege log, Defendants have failed to meet the threshold requirement of presenting their claim of privilege properly. To invoke the privilege, the official claiming the privilege must "'have seen and considered the contents of the documents

and himself have formed the view that on grounds of public interest they ought not to be produced' and state with specificity the rationale of the claimed privilege." Kerr v. United States Dist. Court for N. Dist. of Cal., 511 F.2d 192, 198 (9th Cir. 1975). "Formally claiming a privilege should involve specifying which documents or class of documents are privileged and for what reasons, especially where the nature of requested documents does not reveal an obviously privileged matter." Id. There is no indication from either Defendants' privilege log or briefing whether the head of the department with control over the requested information has claimed the privilege, or that the head of the department engaged in thoughtful consideration of the document's contents. While Defendants' privilege log identifies the documents for which the privilege is claimed, it does not provide explanations of why the specified documents fall within the scope of the law enforcement investigatory privilege.

Defendants have withheld twenty-three documents as "law enforcement sensitive." These documents include: 13, 24, 25, 81, 86, 90, 126, 130-133, 166, 171, 202, 210, 213, 222, 228-29, 235-36, and 343. As to documents 13, 24, 86, 89, 90, 171, 210, 235, and 236, Defendants claim both the law enforcement investigatory privilege and work product protection. For the reasons discussed above, the Court finds that work product protection prevents these documents from discovery. As to the remaining documents for which only the law enforcement investigatory privilege is claimed (25, 81, 126, 130, 131, 132, 133, 166, 202, 213, 222, 228, 229, and 343), the Court finds that Defendants have failed to meet their burden to establish this privilege. Defendants must provide a further showing to the Court of the grounds for assertion of this privilege.

**III.  Discovery and Dispositive Motions**

At the hearing, the parties moved for an extension of time to conduct discovery. Plaintiffs informed the Court that no discovery had been obtained from Western Union to date. Plaintiffs stated that they wanted to depose two individuals from Western Union regarding the amount of money seized under the warrants as well as the extent to which Arizona Attorney General Terry Goddard was personally involved in the seizures. While

Defendants did not oppose an extension of the discovery deadline, they objected to Plaintiffs' requests for specific discovery from Western Union as duplicative of discovery already undertaken.

During the hearing, Defendants also requested a series of dispositive motions on separate, discrete issues, rather than one, all-inclusive, summary judgment motion. Defendants proposed that the parties first submit motions on the issue of standing. Defendants stated that such a motion could be case-dispositive and would prevent the parties from engaging in expensive and time-consuming discovery. If such a motion was not granted in Defendants' favor, then a second motion regarding Eleventh Amendment immunity should be next. A finding in Defendants' favor would eliminate the monetary issues in the lawsuit. Finally, should there be any issues/claims remaining, a third dispositive motion could be filed by the parties after discovery. Plaintiffs opposed the idea of successive summary judgment motions because of the overlap between the various issues.

The Court will allow several dispositive motions on discrete issues, beginning with the issue of standing. Any dispositive motions on standing shall be filed by September 24, 2010. Should this issue not be resolved in Defendants' favor, the Court will allow the parties ninety (90) days thereafter to conduct discovery. While the parties may depose Western Union officials, if they choose, the Court will not permit the parties to engage in duplicative discovery. For example, Arizona Attorney General Terry Goddard already has been deposed previously, and thus, no additional depositions of him may be conducted.

Accordingly,

**IT IS HEREBY ORDERED DENYING** Plaintiff's Motion for Leave to File Third Amended Complaint (Doc. 176).

**IT IS FURTHER ORDERED** that the documents in dispute between the parties are protected as work product, except as to the following:

- <u>Attorney-Client Privilege</u>: documents 9, 14, and 323
- <u>Law Enforcement Investigatory Privilege</u>: documents 25, 81, 126, 130, 131, 132, 133, 166, 202, 213, 222, 228, 229, and 343

For these documents, Defendants must provide the Court with a further showing of the grounds for assertion of the attorney-client privilege and law enforcement investigatory privilege by **August 20, 2010**.

**IT IS FURTHER ORDERED** that the parties have until **September 24, 2010** to file any dispositive motions on the issue of standing.

**IT IS FURTHER ORDERED** that the new discovery deadline will be set following the Court's ruling on the standing issues.

DATED this 29th day of July, 2010.

Stephen M. McNamee
United States District Judge