**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Javier Torres, et al., | ) | No. CV-06-2482-PHX-SMM |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF DECISION** |
| | ) | **AND ORDER** |
| Terry Goddard, in his individual capacity, | ) | |
| Colin Homes, personal representative of | ) | |
| the estate of Cameron Homes, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This case is on remand from the Ninth Circuit Court of Appeals. See Torres v. Goddard, 793 F.3d 1046 (9th Cir. 2015). The Ninth Circuit remanded the issue of whether Defendants, although not entitled to absolute immunity, are entitled to qualified immunity for the service and execution of seizure for forfeiture warrants authorized by the Maricopa County Superior Court. Id. at 1056-59. The parties have briefed the issue and it is now ready for the Court's review. (Docs. 276, 282-83.)

After due consideration of the parties' submissions, the Court will grant Defendants' Supplemental Motion for Summary Judgment Re: Qualified Immunity. (Doc. 276.)

## BACKGROUND

This Court and the Ninth Circuit have previously detailed the extensive factual background of this case.  See Torres, 793 F.3d at 1048-50; (Doc. 261 at 2-8.) In order to determine the narrow qualified immunity issue remanded to this Court, the Court will set out the following relevant facts.

Between 2001 and 2006, in its effort to combat the proliferation of coyotes bringing in undocumented immigrants, Arizona officials executed over twenty warrants to seize thousands of wire transfers that they claimed were highly likely to be connected to criminal conduct. Torres, 793 F.3d at 1048.

Plaintiffs Javier Torres and Lia Rivadeneyra ("Plaintiffs") were customers of Western Union Financial Services, Inc. ("Western Union") whose money transfers were subject to seizure for forfeiture warrants issued by the Maricopa County Superior Court. At the time the seizure for forfeiture warrants were carried out and at the time this lawsuit was initiated, Defendant Terry Goddard ("Goddard") was Attorney General of Arizona. (Doc. 261.) During the time period from 2000 to 2007, Defendant Cameron Holmes ("Holmes") was an Assistant Attorney General in the Arizona Attorney General's Office.[1] Holmes supervised the Financial Remedies Section within the Criminal Division of the Attorney General's Office. (Doc. 261.) Holmes's caseload consisted, in part, of civil forfeiture lawsuits. (Id.) In connection with the seizure warrants at issue and the subsequent forfeiture proceedings involving the electronic money transfers, Holmes acted as the "attorney for the state." Under Arizona's forfeiture statutes, A.R.S. §§ 13–4301 through 13–4315, "[a]ttorney for the state" means an attorney designated by the attorney general . . . to investigate, commence and prosecute an action under this chapter." A.R.S. § 4301(1) (2006).

> The warrant program was carried out by the Arizona Financial Crimes Task Force. The Task Force consisted of personnel from several public agencies including the Arizona Attorney General's Office. Cameron Holmes . . . worked with the Task Force. Holmes sought court approval for and obtained seizure warrants pursuant to Arizona's civil forfeiture statutes. See [A.R.S.]§ 13–4305(A)(1).
>
> While some of the earlier warrants sought seizure of wire transfers involving specific names listed in the warrants, later warrants, or "sweeps," authorized seizure of all wire transfers that met certain specified criteria. The six "criteria-based" warrants identified in plaintiffs' complaint authorized the seizure of every person-to-person Western Union wire transfer that (1) was sent from certain states to Arizona or, under one warrant, from certain states to Sonora, Mexico; (2) met or exceeded a threshold amount ranging from $500

---

[1]Holmes died while this matter was on appeal at the Ninth Circuit and was replaced by the personal representative of his estate, Colin Holmes. Torres, 793 F.3d at 1050.

to $2000; and (3) was made during a certain time period—typically three or four weeks in the spring or fall. Accompanying the warrant applications were factual affidavits sworn to by Task Force detectives. The affidavits claimed that any wire transfer that met the warrants' criteria had a very high likelihood, for some warrants as high as 97 percent, of being "directly involved in illegal drug and/or human smuggling."

The seizures followed the same basic pattern. Holmes supervised the preparation of the seizure warrants and warrant applications. Holmes also reviewed the factual affidavits sworn to by Task Force detectives "in order to satisfy [himself] that the seizure warrant[s] being applied for [were] supported by probable cause." Holmes then sought approval of the warrants before a state court judge. Once the warrants were approved, Holmes served them on Western Union's corporate headquarters. The warrants were "effective upon receipt" by Western Union. They required Western Union to identify all wire transfers that met the listed criteria and "cause the transaction[s] to be 'force paid' to a detention account" maintained for the state by Western Union. Western Union seized the funds on the state's behalf by loading the criteria into its computer system. When a wire transfer that met all the criteria listed in a warrant was initiated, Western Union's computer system automatically diverted the transfer to Arizona's detention account. While the seized funds were held by Western Union, they were considered to be in the "constructive custody of the law enforcement agency making the seizure for forfeiture."

Torres, 793 F.3d at 1049. The Ninth Circuit summarized the Plaintiffs' complaint, as follows:

[Plaintiffs'] section 1983 complaint alleges that defendants, "both personally and through agents or representatives," "served and executed" the criteria-based warrants and "have illegally seized more than $9 million in interstate and international money transfers." *Plaintiffs allege that the seizures were unconstitutional because they were conducted without "particularized probable cause" to believe that their wire transfers "were involved in," or "were the fruits or instrumentalities of, any of the stated criminal offenses" in the warrants.*

Torres, 793 F.3d at 1050 (emphasis added).

In Torres, joining all of the other circuits that had addressed the issue, the Ninth Circuit held that absolute immunity is available to prosecutors in the context of civil forfeiture proceedings. Id. at 1052. In application to the facts of this case, the Ninth Circuit found that as prosecutors, the Defendants' actions were protected by absolute immunity. Id. at 1051-54. However, the Ninth Circuit remanded the Defendants' actions related to service and execution of the seizure warrants. According to the Ninth Circuit's remand instructions, the Court is to determine whether Defendant Holmes's actions in serving and executing the warrants are protected by qualified immunity and whether Defendant Goddard's actions in supervising the service and execution of the warrants are protected by qualified immunity.

- 3 -

1   Id. at 1057, 1059. Further, if any of Holmes's actions or Goddard's actions are not protected

2   by qualified immunity, the Ninth Circuit specified that the Court go on to assess whether

3   those unprotected acts give rise to a cause of action for damages against Holmes and

4   Goddard under section 1983, citing Buckley v. Fitzsimmons, 509 U.S. 259, 274 n.5 (1993).

5   See Torres, 793 F.3d at 1057.[2]

6   ## STANDARD OF REVIEW

7       "The doctrine of qualified immunity protects government officials 'from liability for

8   civil damages insofar as their conduct does not violate clearly established statutory or

9   constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan,

10  555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Before

11  a government official can be subject to liability for civil damages, both prongs of the

12  qualified immunity analysis must be satisfied: (1) whether the official violated the plaintiff's

13  constitutional rights, and if so, (2) whether the right violated was clearly established at the

14  time of the official's conduct. Pearson, 555 U.S. at 232.

15      Regarding the constitutional violation prong in search and seizure cases, "[w]here the

16  alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the

17  fact that a neutral magistrate has issued a warrant is the clearest indication that the officers

18  acted in an objectively reasonable manner or, as we have sometimes put it, in objective good

19  faith" . . . unless "it is obvious that no reasonably competent officer would have concluded

20  that a warrant should issue." Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012)

21  (further citation and quotation omitted).

22  _____

23      [2]Previously, this Court granted summary judgment to Defendants and dismissed

24  Plaintiffs' lawsuit, which included their Fourth Amendment claims, their procedural due
    process claim, and their Commerce Clause claim. (Doc. 261). Plaintiffs appealed to the Ninth

25  Circuit. The Ninth Circuit only examined Plaintiffs' claim for seizure of their funds without
    probable cause and granted a limited remand to determine whether qualified immunity

26  shields the Defendants from a Fourth Amendment claim premised on service and execution
    of the seizure warrants. Plaintiffs did not petition for rehearing for any claim allegedly

27  overlooked. The only claim remanded to this Court, and thus at issue, is Plaintiffs' Fourth

28  Amendment seizure claim related to the government officials' claim for qualified immunity.

Regarding the clearly established prong, the burden is on the Plaintiffs to show that the law was clearly established at the time of the alleged violation. See Davis v. Scherer, 468 U.S. 183, 197-98 (1984). The Supreme Court requires factual correspondence, as follows:

> the right the official is alleged to have violated must have been clearly established in a more particularized, and hence more relevant, sense. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (further citation and quotation omitted). The Supreme Court has repeatedly emphasized that courts are not to define clearly established law at a high level of generality, "[t]he dispositive question is whether the violative nature of particular conduct is clearly established." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (further citation and quotation omitted).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Messerschmidt, 132 S. Ct. at 1244 (further citation and quotation omitted).

## DISCUSSION

Defendants contend that qualified immunity shields them from personal liability regarding their actions in serving and executing a pair of state court issued seizure for forfeiture warrants to Western Union headquarters. (Doc. 276.) In support, Defendants argue that serving and executing a pair of seizure warrants issued by two Maricopa County Superior Court Judges to Western Union headquarters in connection with a criminal investigation did not violate Plaintiffs' rights against unreasonable seizure under the Fourth Amendment. (Id.)

In support, Defendants contend that Plaintiffs have failed to provide the legal authority which requires such "particularized" probable cause in the factual context of the seizure of money or other personal property for forfeiture. (Doc. 258 at 11.) Rather, Defendants contend that Plaintiffs have ignored an extensive amount of case authority indicating that, in the context of seizure and forfeiture of money, the government need only

to show evidence, circumstantial or otherwise, that is sufficient to support a reasonable belief that the money has a general connection to crime. See, e.g., U.S. v. Approximately $1.67 Million In Cash, 513 F.3d 991, 999-1000 (9th Cir. 2008); U.S. v. $5,644,540,00 in U.S. Currency, 799 F.2d 1357, 1363 (9th Cir. 1986); U.S. v. $93,685.61 in U.S. Currency, 730 F.2d 571, 572 (9th Cir. 1984). As long as such evidence is shown in support of probable cause, there is no need to tie the money in question to a particular identifiable illicit transaction. See Approximately $1.67 Million in Cash, 513 F.3d at 999; Marine Midland Bank v. U.S., 11 F.3d 1119, 1126 (2d Cir. 1993).

Defendants argue that there is no case law holding that their service and execution of the seizure for forfeiture warrants was a clearly established violation of the Fourth Amendment. (Doc. 276.) According to Defendants, given the case law involving money forfeiture, Plaintiffs can only defeat their defense of qualified immunity if they are able to point to legal authorities that would have clearly established that at the time of seizure Plaintiffs' type of transaction-specific probable cause was required to support seizure warrants for electronic money transfers.

Plaintiffs maintain that the central question in this case is the Fourth Amendment's main rule of reasonableness which requires "individualized suspicion of wrongdoing" citing Chandler v. Miller, 520 U.S. 305, 313 (1997). (Doc. 282 at 2.) Plaintiffs argue that statistics alone cannot satisfy the Fourth Amendment probable cause standard for issuing a seizure warrant. (Id.) Based on the lack of individualized suspicion, Plaintiffs contend that the seizure warrants were facially invalid, which invalidity was not cured by the supporting affidavits. (Id. at 3.) Because clearly established Fourth Amendment law requires particularized probable cause, and the warrants and affidavits at issue did not provide such probable cause, Plaintiffs argue that Defendants are not entitled to qualified immunity, citing Messerschmidt, 132 S. Ct. at 1244. (Id.)

Plaintiffs do acknowledge that when a seizure warrant has been reviewed and issued by a judge, in order to reach the conclusion that qualified immunity does not attach to the service and execution of the warrant, Messerschmidt requires that it be so "obvious that no

reasonably competent officer would have concluded that a warrant should issue . . . for example, where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." 132 S. Ct. at 1245 (further citation and quotation omitted). In support that Defendants acted unreasonably in the service and execution of the warrants, Plaintiffs rely on United States v. Grant, 682 F.3d 827 (9th Cir. 2012) and People v. Underwood, 725 F.3d 1076 (9th Cir. 2013). (Doc. 282 at 7-9.) For instance, the Grant court found the officers' reliance on the search warrant "entirely unreasonable," despite review and approval by a magistrate because the supporting affidavit did "not set out any plausible connection between [the defendant, whose home was authorized by the warrant to be searched] and the gun or ammunition used in the homicide." 682 F.3d at 836. Probable cause had not been established due to the absence of evidence connecting the defendant to the homicide being investigated. Id. at 828. Continuing, Plaintiffs argue that here, as in Grant, there was no evidence connecting the wire transfers sent by Plaintiffs to any particular crime. (Doc. 282 at 8.) Finally, Plaintiffs contend that the warrants' statistical inferences and general conclusions about drug and human smugglers provided no particularized probable cause to Defendants about Plaintiffs nor any of Plaintiffs' transactions. (Id. at 9.)

The Court disagrees with Plaintiffs. The Court finds that Defendants are entitled to qualified immunity. Defendants are shielded by qualified immunity unless both prongs of constitutional analysis are satisfied: (1) whether the official violated the plaintiff's constitutional rights, and if so, (2) whether the right violated was clearly established at the time of the official's conduct. See Pearson, 555 U.S. at 232. The Court initially finds that Defendants did not violate the Plaintiffs' constitutional rights, and, next, even assuming a constitutional violation, such a violation was not a violation of clearly established law at the time of the service and execution of the seizure warrants.

*Constitutional Violation*

The Court finds that the seizure warrant for forfeiture at issue did not violate Plaintiffs' rights against unreasonable seizure under the Fourth Amendment. In

Messerschmidt, the Supreme Court held that "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith." 132 S. Ct. at 1245.

However, the issue here is not whether the non-party police investigators offered enough evidence in their affidavits and materials to meet the requirements of probable cause. The only issue is whether, even assuming that probable cause was insufficient, their affidavits and materials were so lacking in indicia of probable cause "as to render official belief in its existence entirely unreasonable." Messerschmidt, 132 S. Ct. at 1245. Thus, Plaintiffs would be required to show that when Defendant Holmes, under the supervision of Defendant Goddard, served the warrants on Western Union, a finding could be made that neither officer acted objectively reasonable in concluding that a warrant should issue. Id.

Under the Fourth Amendment, government officials who have a reasonable but mistaken belief as to the facts in support of the question of probable cause are not in violation of the Constitution. See Anderson v. Creighton, 483 U.S. 635, 641 (1987) (stating that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable."); see also Armstrong v. Asselin, 734 F.3d 984, 991 (9th Cir. 2013) (stating that a state official is entitled to qualified immunity even for a seizure based on an invalid warrant if he has a reasonable belief that the warrant is supported by reasonable cause).

The record in this case requires a finding of no constitutional violation because Defendants acted reasonably in service and execution of the warrants believing that the warrants were supported by probable cause. In support, two Maricopa County Superior Court Judges, Judge James Keppel and Judge Brian Ishikawa, after reviewing the supporting affidavits and materials, both found probable cause and issued the challenged warrants. (Doc.

231-8 at 57-71.) It follows from <u>Messerschmidt</u>, the fact that two Maricopa County Superior Court Judges issued seizure for forfeiture warrants is the clearest indication that Defendants, in the service and execution of those warrants, acted in an objectively reasonable manner. <u>See</u> 132 S. Ct. at 1245.

Next, although its opinion was subsequently vacated on other grounds by the Arizona Supreme Court, this Court finds the reasoning of the Arizona Court of Appeals persuasive on the issue of probable cause because it thoroughly reviewed and analyzed the facts at issue and the merits of Judge Ishikawa's finding.[3] <u>See</u> <u>State of Arizona v. Western Union Fin. Serv.</u>, 219 Ariz. 337, 353-62, 199 P.3d 592, 608-17 (App. 2008), <u>opinion vacated on other grounds by</u>, 220 Ariz. 567, 208 P.3d 218 (2009).[4] In summary, the Arizona Court of Appeals found "the Seizure Warrant at issue in this case was supported by probable cause that proceeds of Arizona racketeering activities would be in [Western Union's] possession in the form of [electronic credits] during the ten-day time frame of the Warrant. Therefore, the Warrant did not violate the Fourth Amendment merely because the [electronic credits] at issue were not in [Western Union's] possession at the time the court issued the Warrant. . . . [U]nder the specific circumstances of this case, the Seizure Warrant did not violate the Fourth Amendment as it was supported by probable cause and was sufficiently particularized in describing the property to be seized and its location. <u>Id.</u> at 362, 199 P.3d at 617.

Specifically, the State had the burden of showing that the electronic credits of Western Union were the proceeds of or used to facilitate Arizona racketeering offenses, namely human smuggling and narcotics trafficking. <u>See id.</u> at 343, 199 P.3d at 598 (citing A.R.S. § 13–2314(C) (2001) (authorizing court to issue seizure warrant prior to determination of

---

[3]The Court finds that the two warrant applications signed by Judges Keppel and Ishikawa are functionally similar for purposes of reviewing the determination of probable cause.

[4]The Arizona Supreme Court determined that Arizona's courts lack jurisdiction to issue a warrant seizing Western Union money transfers sent from other states to the Country of Mexico. 220 Ariz. at 568, 208 P.3d at 219.

liability for racketeering); A.R.S. § 13–2314(G)(3) (providing that proceeds traceable to racketeering subject to forfeiture); and A.R.S. § 13–4310(A) (2001) (authorizing court to issue seizure warrant "prior or subsequent to the filing of a notice of pending forfeiture, complaint, indictment or information"). In support of probable cause, the court of appeals reviewed the submitted affidavits and declarations from members of a financial crimes task force (the "Task Force"). Id. at 353-62, 199 P.3d at 608-17. Based on its review of the totality of the Task Force findings, the court of appeals concluded that the electronic credits targeted by the seizure warrants had a causal nexus to human smuggling and/or narcotics trafficking. Id. at 359, 199 P.3d at 614 (stating that the state had produced credible evidence demonstrating a probability that the targeted electronic credits were linked to racketeering activity). This finding of probable cause by the Arizona Court of Appeals further supports that Defendants, in the service and execution of those warrants, acted in an objectively reasonable manner. See Messerschmidt, 132 S. Ct. at 1245. There is no evidence that the Task Force affidavits and materials were so lacking in indicia of probable cause as to render Defendants' official belief in probable cause entirely unreasonable.[5] See id.

Thus the Court easily concludes that even if Defendants reasonably but mistakenly concluded that probable cause was present (which in fact probable cause was present), they

---

[5]The Court disagrees with Plaintiffs that United States v. Grant, 682 F.3d 827 (9th Cir. 2012), is applicable to the facts at issue. In Grant, the court found that the affidavit in support of the search warrant did "not set out any plausible connection between [the defendant, whose home was authorized by the warrant to be searched] and the gun or ammunition used in the homicide." 682 F.3d at 836. Probable cause had not been established due to the absence of evidence connecting the defendant to the homicide being investigated.

Initially, the Court finds that Grant is distinguished as it overturned a denied suppression motion but did not involve any qualified immunity analysis. Furthermore, there is abundant evidence in support of probable cause in this case, as opposed to Grant. The Task Force's investigation into human smuggling and the use by smugglers of Western Union's electronic credits in violation of Arizona's racketeering statutes lasted from 2000 to 2006, when the warrants at issue were served by Defendants. The lengthy analysis by the Arizona Court of Appeals demonstrated that the electronic credits targeted by the seizure warrants had a causal nexus to human smuggling and/or narcotics trafficking.

1   will not be held personally liable. See Anderson, 483 U.S. at 641. Defendants are entitled to

2   qualified immunity. See Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (stating that the shield

3   of qualified immunity "protects all but the plainly incompetent or those who knowingly

4   violate the law.") (further citation omitted).

5           *Clearly Established Law*

6           Even when it is assumed that a constitutional violation may have been committed,

7   Plaintiffs must also establish that the alleged constitutional violation was clearly established

8   and gave fair notice to the state officials at issue. In the particular factual context of this case,

9   Plaintiffs cannot so demonstrate.

10          Plaintiffs contend that Defendants are not entitled to qualified immunity for their roles

11  in serving and executing general seizure warrants that were devoid of particularized probable

12  cause. (Doc. 282 at 2-3.) According to Plaintiffs, the warrant violated the Fourth

13  Amendment's requirement of "individualized suspicion of wrongdoing." (Id.) Based on the

14  lack of individualized suspicion, Plaintiffs contend that the seizure warrants were facially

15  invalid, which invalidity was not cured by the supporting affidavits. (Id. at 3.) Plaintiffs

16  contend that by the time Defendants caused the seizure of their funds in 2006, it had been

17  clear for decades that statistical inferences and profile evidence alone cannot establish

18  probable cause. (Id. at 4.) Plaintiffs emphasize that there was no evidence connecting the

19  wire transfers sent by Plaintiffs to any particular crime. (Id. at 8.)

20          Defendants respond that state officials are not expected to second-guess issuing courts

21  that have found probable cause, having the responsibility to scour the materials for defects

22  in probable cause to ensure that a warrant may issue. As stated in both Messerschmidt and

23  Armstrong, when a court has issued a warrant, any alleged defects, assuming they exist,

24  would need to be obvious to the state official with just a simple glance. Messerschmidt, 132

25  S. Ct. at 1250; Armstrong, 734 F.3d at 992. Here, any defects, if there were any, would only

26  become apparent upon a careful and detailed legal analysis, looking at the warrant, affidavit,

27  and relevant statutes. Thus, Defendants contend that no clearly established law gave them

28  fair notice that service and execution of the warrants in this case was a constitutional

1    violation.

2       The Court agrees with Defendants that no clearly established law gave them fair

3 notice that service and execution of the seizure warrants for forfeiture in this case would be

4 a constitutional violation. The burden is on the Plaintiffs to show that the law was clearly

5 established at the time of the alleged violation. See Davis v. Scherer, 468 U.S. 183, 197-98

6 (1984). The Supreme Court has repeatedly stated that clearly established law is not defined

7 at a high level of generality. See Mullenix, 136 S. Ct. at 308. "For federal law to be clearly

8 established, there must be fairly close factual correspondence between the prior precedents

9 and the case at hand. Federal law is less likely to be clearly established when it depends on

10 an *ad hoc* balancing of competing interests between the state and the individual." Martin A.

11 Schwartz, Fed. Judicial Ctr., Section 1983 Litigation, 147 (3rd ed. 2014). In Mullenix, the

12 Supreme Court reiterated that "[t]he dispositive question is whether the violative nature of

13 particular conduct is clearly established." 136 S. Ct. at 308; see also City & Cnty. of San

14 Francisco v. Sheehan, 135 S. Ct. 1765, 1777 (2015) (requiring for clearly established law that

15 the state official be given fair notice of the particular conduct which is prohibited).

16       Plaintiffs reliance upon Grant to establish clearly defined law for Defendants is

17 misplaced. In Grant, at issue was the absence of facts in the search warrant demonstrating

18 probability that the weapon in the homicide investigation would be found at the search

19 location. Grant is far removed from the facts at issue here. In support of the seizure warrant

20 for forfeiture, the facts at issue in the warrant application showed that the *res* being seized

21 was probably the proceeds of racketeering allegations.

22       Grant has no bearing on the Court's "clearly established" analysis because the

23 application for the search warrant in Grant took place in 2009, three years after Defendants'

24 service and execution of the seizure for forfeiture warrants in 2006. The ruling in Grant by

25 the Ninth Circuit did not occur until 2012. As a matter of law, clearly established law for

26 qualified immunity purposes is the law clearly established at the time of the conduct at issue.

27 See Anderson, 483 U.S. at 639 (stating that whether a state official may be held personally

28 liable for an allegedly unlawful official action "generally turns on the objective legal

1  reasonableness of the action, assessed in light of the legal rules that were clearly established

2  at the time it was taken.").

3          Moreover, even if considered, for federal law to be clearly established, there must be

4  fairly close factual correspondence between the prior precedents and the case at hand.

5  Otherwise, the state official is not put on notice that existing precedent has placed the

6  statutory or constitutional question beyond debate. See al-Kidd, 131 S. Ct. at 2083; see also

7  Mullenix, 136 S. Ct. at 308 (stating that "[t]he dispositive question is whether the violative

8  nature of particular conduct is clearly established"). Because there is no fairly close factual

9  correspondence between Grant and the facts here, Grant would not have provided any notice

10  to Defendants here that any reasonable official would have understood that he was violating

11  the constitutional right at issue.

12          Plaintiffs also rely on People v. Underwood, 725 F.3d 1076 (9th Cir. 2013) (stating

13  that the warrant affidavit was so lacking in indicia of probable cause as to preclude any

14  officer's objectively reasonable reliance on it). As in Grant, Underwood has no bearing on

15  the Court's "clearly established" analysis because the application for the search warrant at

16  issue in Underwood took place in 2010, four years after Defendants' service and execution

17  of the seizure for forfeiture warrants in 2006. The ruling in Underwood by the Ninth Circuit

18  did not occur until 2013.

19          Moreover, Underwood is not factually similar. It deals with the lack of probable cause

20  to search for drug trafficking evidence. The affidavit in support of the search warrant failed

21  to define "drug trafficker" and provided no facts in support of the conclusion that defendant

22  was a drug trafficker. The Ninth Circuit held that probable cause had not been established

23  because the affidavit did not provide proper support for the conclusion that defendant was

24  a drug courier and no support for the conclusion that drug trafficking evidence would be

25  found at his address. Because there is no fairly close factual correspondence between

26  Underwood and the facts here, even if Underwood were timely, which it is not, it would not

27  have provided notice to Defendants here that any reasonable official would have understood

28  that his actions violated the constitutional right at issue.

1   Thus, Plaintiffs have failed to carry their burden of showing clearly established law
2   at the time of the alleged violation that Defendants' service and execution of the seizure for
3   forfeiture warrants was objectively unreasonable in light of the legal rules that were clearly
4   established at the time it was taken.

5   **CONCLUSION**

6   The Court finds that qualified immunity shields Defendants from personal liability
7   regarding their actions in serving and executing a pair of 2006 state court issued seizure for
8   forfeiture warrants to Western Union headquarters.

9   Accordingly, on the basis of the foregoing,

10   **IT IS HEREBY ORDERED** granting Defendants' Supplemental Motion for
11   Summary Judgment Re: Qualified Immunity. (Doc. 276.) The Clerk of Court shall issue
12   Judgment in favor of Defendants and terminate this case.

13   **IT IS FURTHER ORDERED** that the Clerk of Court forward this Order to the Ninth
14   Circuit Court of Appeals.

15   DATED this 29th day of June, 2016.

16

17   _____

18   Stephen M. McNamee
        Senior United States District Judge
19

20

21

22

23

24

25

26

27

28

- 14 -